■ In the Matter of JERICHO JEWISH CENTER et al., Respondents, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant, et al., Respondent. [617 NYS2d 598] —Peters, J. Appeal from a judgment of the Supreme Court (Cardona, J.), entered August 26, 1993 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Public Service Commission denying petitioners' request for a refund of electric bill payments.

In the mid-1970s, respondent Public Service Commission (hereinafter the PSC) mandated that certain utilities file proposed tariffs to offer time-of-day pricing as a basis for a new rate structure *(see, Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661). In response to the PSC directive, respondent Long Island Lighting Company (hereinafter LILCO) submitted "Service Classification No. 1—Multiple Rate Periods" (hereinafter SC-1 MRP) which established five different rates for electricity based on the time of day and temperature. By opinion number 77-11 issued September 1, 1977, LILCO was ordered to proceed to formalize this proposal and the PSC noted therein that "[t]he rate will be applicable to all residential customers whose consumption in a past 12-month period exceeded 45,000 kWh". In a footnote thereafter, the PSC further specified that "[r]eligious institutions would be given the choice by LILCO of whether to be metered on a time-of-day basis". In 1979, PSC tariff analysis staff recommended the approval of certain revisions proposed by LILCO in its SC-1 MRP rate proposal. By August 1979, LILCO had installed time-of-day meters in the majority of its residential customers which met the mandatory threshold. The SC-1 MRP rate was finally implemented on January 1, 1980.

Six of petitioners, religious institutions and customers of LILCO, subsequently brought a complaint to the PSC claiming that they were entitled to retroactive billing since they should have been billed on the SC-1 MRP rate as of January 1, 1980 but were denied such rate due to LILCO's failure to inform them of the rate change. When LILCO failed to produce

documentation to indicate that it informed its religious institutional customers about the option of choosing the SC-1 MRP, the Hearing Officer found that no notice was given. It was further found that LILCO's tariff obligated it "to endeavor to assist the applicant in the selection of the service classification which may be most favorable to his requirements" and that such duty extended to informing petitioners of the new optional rate. In finding that LILCO had no justification for failing to offer the SC-1 MRP rate to its religious organizations, the Hearing Officer concluded, *inter alia*, that rebilling should occur for the period beginning February 1982 but that all periods prior thereto could not be so rebilled since such calculations would be speculative.

LILCO subsequently requested a rehearing due to its discovery of rate brochures which it alleged had been sent to all residential rate customers, including petitioners, in 1980 and 1981. The Hearing Officer found the 1980 brochures to be ineffective even though one such brochure stated the applicability of SC-1 MRP as "optional to qualifying religious accounts". It further found that the remaining brochures sent in 1981 were too late to constitute timely notice.

LILCO appealed to the PSC which found, *inter alia*, that the 1980 brochure, which specifically mentioned the optional availability of the SC-1 MRP rate to qualifying religious accounts, was sufficient notice despite an earlier brochure which failed to mention such availability and that LILCO met its obligation to bill religious organizations on a rate no higher than the domestic rate. It therefore reversed the Hearing Officer's determination.

Petitioners thereafter commenced this CPLR article 78 proceeding to annul the PSC's determination and LILCO intervened as a respondent. Supreme Court found that LILCO failed to meet the notice requirement of 16 NYCRR 136.80* and that the PSC's determination was therefore affected by an error of law. The court further found, *inter alia*, that the PSC's determination lacked a rational basis. The PSC appeals.

Contrary to the Supreme Court, we find that the notification requirement of 16 NYCRR 136.80 does not apply in the instant case since it was a rate ordered by the PSC after hearings held on notice to the public and because the rate proposed did not meet the statutory definition of a "major rate change" *(see,* Public Service Law § 66 [former (12)]). Hence, in finding that the notice requirement in 16 NYCRR 136.80 does

---

* A typographical error resulted in the court citing to 16 NYCRR 136.88.

not apply, the primary issue then becomes whether the PSC's determination is supported by a rational basis *(see, Matter of Timm v New York State Pub. Serv. Commn.,* 144 AD2d 139, *appeal dismissed* 74 NY2d 713; *see also, Matter of Gansevoort Holding Corp. v Consolidated Edison Co.,* 167 AD2d 648).

In reviewing the record, we note that the PSC found that LILCO distributed a brochure to all customers in June and September 1980 in which the SC-1 MRP rate was one of the rate classifications defined for customer information. Although the earlier of the two brochures which specifically addressed the SC-1 MRP rate did not mention its optional availability to religious accounts, the general rate brochure sent thereafter included information regarding the SC-1 MRP rate as one for which some religious accounts were eligible. In noting that LILCO's tariff provision provides that "The Company will endeavor to assist a customer in the selection of the Service Classification which may be most favorable to his requirements" (PSC No. 7-Electricity: 4th Revised Leaf No. 7 II2A.1.3), the PSC determined, and we agree, that in light of the distribution in 1980 of the general rate brochure to all customers, including its religious customers, and Public Service Law § 66 (12) which requires all utilities to, *inter alia,* publish new rates in local newspapers and to maintain their rates on public file, such activities "fall within the range of 'reasonable efforts' to advise customers of its rates as a way of assisting an existing customer in selecting the most beneficial rate".

With respect to any further claim contending discriminatory treatment of the religious accounts, we find that the PSC rationally concluded that LILCO met its obligation to bill the religious customers at a rate no higher than the domestic rate *(see,* Public Service Law former § 76) and that the SC-1 MRP allowed it the option of choosing the time-of-day rate in direct contrast to other residential rate customers who were not offered such option. We further find that given the experimental nature of such rate, the determination of the PSC authorizing the introduction of time-of-day pricing to a limited number of customers during its initial implementation was rational *(see, Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661). As noted by the Court of Appeals in *Matter of New York State Council of Retail Merchants v Public Serv. Commn.:* "we cannot say that the courts are entitled to substitute their judgment for the evaluation of the commission, giving fair consideration to the expertise possessed by the commission in weighing the

impact of rate-fixing factors on both the utilities and the consuming public and reaching the ultimate determination as to how appropriately to proceed in this given instance. To the extent that it is applicable, equal protection analysis recognizes the right of government to move forward by gradual progression rather than by universal application or not at all" *(supra,* at 669-670).

We have reviewed all other contentions raised by the parties and find them to be without merit. We note that "[i]t is the agency's role to weigh conflicting evidence and to assess the credibility of witnesses" *(Matter of Gansevoort Holding Corp. v Consolidated Edison Co., supra,* at 650). Accordingly, we find that the determination of the PSC was rational and should be confirmed.

Crew III, J. P., Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determination confirmed and petition dismissed.